UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION (AKRON)

| | |
|---|---|
| CHRISTOPHER FULTZ, | ) |
|     Plaintiff, | ) CIVIL COMPLAINT |
| | ) |
| | ) Case No. 5:21-cv-455 |
| v. | ) |
| | ) |
| GREAT LAKES ENTITIES, INC. | ) |
| | ) |
|     Defendant. | ) **JURY DEMAND** |
| | ) |

## COMPLAINT

Now comes CHRISTOPHER FULTZ ("Plaintiff"), complaining as to the conduct of GREAT LAKES ENTITIES, INC. ("Defendant").

### NATURE OF THE ACTION

1. Plaintiff brings this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Ohio Consumer Sales Practices Act ("CSPA"), R.C. 1345.02 *et seq.*

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims occurred within this District.

**PARTIES**

4. Plaintiff is a natural person residing in Summit County.

5. Defendant is a corporation, incorporated in the State of New York.

6. Defendant's principal place of business is 3659 Eggart Rd., Orchard Park, NY 14127.

**BACKGROUND**

7. On or around 2015, Plaintiff borrowed funds in the amount of approximately $1,249.00 from a payday loan company known as "Moneykey" (the "account").

8. Plaintiff used the account for personal purposes, such as to pay for his everyday living expenses, including grocery bills and utilities.

9. After the account went into default, it was bought and sold various times to different companies.

10. In about June 2019, Plaintiff resolved his outstanding balance in a negotiated deal with TrueAccord Corp., a legitimate third-party debt collector.

11. Nevertheless, Defendant acquired Plaintiff's personal information and attempted to collect upon the already-resolved account.

12. During September 2020, Defendant placed various calls to Plaintiff in an attempt to collect upon the account.

13. Plaintiff did not receive, and on information and belief, Defendant did not timely send, the written notice of debt collection required by 15 U.S.C. 1692g(a).

### *The October 5, 2020 Call*

14. On or about October 5, 2020, Plaintiff returned a missed call from Defendant after business hours. Defendant's voicemail message falsely identified Defendant as the "Office of John Davis."

### *The October 6, 2020 Call*

15. Plaintiff then called the number back the next day, and Defendant's employee identified Defendant as the "Davis & Thompson Law Firm."

16. Plaintiff asked Defendant's employee for the real name of the company, but when he did so, Defendant's employee simply ended the call.

### *The October 9, 2020 Call*

17. On or about October 9, 2020, Defendant's employee "Michael" told Plaintiff that the name of Defendant's company is the "Jacob & Myers Law Firm,"

18. Defendant's employee "Michael" then falsely represented that Defendant is a law firm, not a debt collector.

19. On that call, Michael told Plaintiff that there was a pending check fraud case against him relating to Summit Federal Credit Union.

20. Michael falsely told Plaintiff that "Attorney Michael Thompson" was handling the account.

21. On or about October 14, 2020, Defendant's employee "Jacob Myers" claimed to work for a commercial attorney's office in Baltimore, Maryland.

22. When Plaintiff requested a mailing address, Jacob Myers refused to provide a mailing address.

[ 3 ]

23. Jacob Myers falsely claimed that Plaintiff was sent a "debt verification" of some type in the mail, and that, as a result, the matter could only be resolved through the court system.

24. Jacob Myers accused Plaintiff of committing check fraud and passing bad checks.

25. Jacob Myers offered to "settle" the account with Plaintiff for $679.00, assuming Plaintiff paid by October 31, 2020.

*The October 27, 2020 Call*

26. On October 27, 2020, Defendant's employee "Nicky Bennett" called Plaintiff and claimed that she worked for David Thompson.

27. Nicky Bennett falsely told Plaintiff that his account was "locked" because Defendant sent out a "verification of debt" on October 23, 2020.

*The November 4, 2020 Call*

28. On or about November 4, 2020, Plaintiff answered a call from Defendant but was immediately disconnected.

29. Defendant's employee "Ashley" called Plaintiff back that day.

30. Ashley originally falsely told Plaintiff that she worked for a law office, but subsequently stated she worked for an answering service.

31. Plaintiff asked Ashley why he had not received a notice of debt collection in the mail from Defendant, as required by 15 U.S.C. 1692g(a).

32. Ashley then falsely stated that Defendant had mailed the notice to an "old address." Nevertheless, Ashley only had Plaintiff's current address on file.

[ 4 ]

33. Plaintiff requested that he be sent some form of 1692g notice or debt verification, but Ashley refused to send or email Plaintiff any kind of notice.

34. Ashley accused Plaintiff of committing breach of contract and check fraud, claiming that Defendant would be filing charges.

35. Ashley also provided Plaintiff with the email address: payments@greatlakesentities.com.

*The November 4, 2020 Call*

36. On or about November 13, 2020, Plaintiff and Defendant had a conversation on the phone in which they agreed that Plaintiff would not call Defendant, and Defendant would not call Plaintiff.

37. Further, by at least November 17, 2020, Defendant knew that Plaintiff was represented by a lawyer with respect to the account, and had knowledge of that lawyer's name and address.

38. Nevertheless, Defendant called Plaintiff on November 18, 2020 at approximately 11:21 A.M. and December 15, 2020 at approximately 9:21 A.M.

*Defendant's False Claim of Being a Mere "Payment Processor"*

39. Defendant, through its employee "John," has repeatedly contended that it is not liable for the above conduct because it is merely a "payment processor."

40. Defendant claims to have three branches, including one in Orchard Park, New York, and another in Jacksonville, Florida.

41.     Both of these cities are hubs of debt collector activity, and in both locations, there is a significant trade in so-called "bad paper"—that is, accounts that, like Plaintiff's, have already been collected in full or settled.

42.     In fact, over the past two decades, Buffalo has become so well-known as the capital of such debt collection schemes that in February 2020, a movie about sketchy debt-collection was titled "Buffaloed."

43.     Moreover, Defendant's website, greatlakesentities.com, advertises that "Great Lakes Entities" is in the business of "Professional Debt Recovery."

44.     Defendant's website states that:  "We get in, identify reasons for non-payment, work towards a resolution, and get accounts collected faster than any agency in the business."

45.     Defendant's website further states that:  "We specialize in recovering debt in the following areas:  Medical, Commercial, Auto Deficiency and Judgements."

46.     Moreover, Defendant lists, on its website, the following under its "Privacy Policy":  "If you feel that we are not abiding by this privacy policy, you should contact us immediately at paymentdept@greatlakesentities.com."

47.     The email extension "@greatlakesentities.com" is the same as the one that Defendant's employee "Ashley" provided to Plaintiff.

48.     Thus, Defendant's representations to Plaintiff that it is not a "debt collector," but rather a "payment processor" or law firm are entirely false.

49.     Plaintiff has been humiliated, harassed, intimidated, confused, and deprived of his legal rights by Defendant's actions.

[ 6 ]

### COUNT I—VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

50. Plaintiff realleges the paragraphs above as though fully set forth herein.

51. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) of the FDCPA.

52. Defendant is a "debt collector" as defined by § 1692a(6) of the FDCPA because the principal purposes of its business is the collection of debts, and because it uses the instrumentalities of interstate commerce to do so.

53. In the alternative, Defendant is a "debt collector" under § 1692(a)(6) because it regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

54. Defendant violated 15 U.S.C. § 1692 in the following ways:

   a. Continuing to communicate with Plaintiff after it knew or should have known that Plaintiff was represented by an attorney with respect to the account, in violation of 1692c(a)(2);

   b. Failing to "meaningfully identify" itself in its telephone calls to Plaintiff, in violation of § 1692d(6), by providing false names and by refusing to provide a physical address;

   c. Falsely representing the legal status of the alleged debt as due and owing, when it in fact was not, in violation of § 1692e(2)(A);

   d. Falsely representing itself or implication that any individual is an attorney or that any communication is from an attorney, in violation of § 1692e(3);

[ 7 ]

e. Falsely stating that a lawsuit was pending against Plaintiff and insinuating that further legal actions would be taken against Plaintiff, in violation of § 1692e(5);

f. Falsely stating or implying that Plaintiff had committed the crime of check fraud, in violation of § 1692e(7);

g. Falsely using the name of a business, company, or organization other than the true name of the debt collector's business, company, or organization, in violation of § 1692e(14);

h. Failing to send in the mail the required written notice of debt collection under § 1692g(a), or, in the alternative, failing to send it within five days of the initial communication with Plaintiff;

i. Taking actions during the thirty days following the initial communication with Plaintiff that overshadowed Plaintiff's rights, such as threatening him with civil suits and criminal prosecution for "check fraud," in violation of § 1692g(b).

## **COUNT II — VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**

55. Plaintiff realleges the paragraphs above as though fully set forth herein.

56. The CSPA, pursuant to R.C. 1345.02(A), states that "[n]o supplier shall commit an unfair or deceptive practice in connection with a consumer transaction."

57. Plaintiff is a "person" as defined by R.C. 1345.01(B).

58. Defendant is a "supplier" as defined by R.C. 1345.01(C). *Taylor v. First Resolution Invest. Corp.*, 72 N.E.3d 573, 600 (Ohio 2016), *cert. denied sub nom. First Resolution Inv. Corp. v. Taylor-Jarvis*, 137 S. Ct. 398 (2016).

59. Debt collection is a "consumer transaction" as defined by R.C. 1345.01(A).

60. R.C. 1345.09(B) grants Plaintiff a private right of action against Defendant.

61. Defendant committed unfair or deceptive acts or practices in violation of the CSPA, R.C. 1345.02(A), when it engaged in acts and practices in violation of the FDCPA as set forth above.

62. Such acts and practices have been previously determined by Ohio courts to violate the CSPA, R.C. 1345.01 *et seq*. *See, e.g., Kelly v. Montgomery Lynch & Assocs., Inc.*, No. 1:07-CV-919, 2008 WL 1775251, at *11 (N.D. Ohio Apr. 15, 2008) ("[A]ny violation of any one of the enumerated sections of the FDCPA is necessarily an unfair and deceptive act or practice in violation of R.C. § 1345.02 and/or § 1345.03").

63. Defendant committed such actions after such decisions were available for public inspection pursuant to R.C. 1345.05(A)(3).

WHEREFORE, Plaintiff respectfully requests judgment as follows:

 **a.** Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

 **b.** Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. § 1692k(a)(2)(A);

 **c.** Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1692k(a)(1);

 **d.** Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k(a)(3);

 **e.** Awarding Plaintiff statutory, actual, punitive, and treble damages pursuant to the CSPA, plus reasonable attorney fees to include a fee multiplier;

 **f.** Awarding Plaintiff injunctive relief pursuant to the CSPA forbidding Defendant from continuing its illegal practices against him, and requiring it to cease any and all collection activities on Plaintiff's settled account, and further enjoining Defendant from further selling or transmitting Plaintiff's personal information to others; and

 **g.** Awarding Plaintiff the costs of this action and any other appropriate relief.

**A TRIAL BY JURY IS DEMANDED.**

Dated:  February 28, 2021

                                                     By:  s/ Jonathan Hilton

Jonathan Hilton (0095742)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 927-5980
jhilton@hiltonparker.com
*Attorney for Plaintiff*

[ 11 ]